UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TOY L. WILLIAMS,

                   Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                   Defendant.

Case No. 3:11-cv-05242-BHS-KLS

REPORT AND RECOMMENDATION

Noted for March 30, 2012

      Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits should be reversed and this matter

should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On June 18, 2007, plaintiff filed an application for SSI benefits, alleging disability as of

February 1, 2007, due to post traumatic stress disorder ("PTSD"), depression and scoliosis.  See

Administrative Record ("AR") 10, 120, 130.  Her application was denied upon initial

REPORT AND RECOMMENDATION - 1

administrative review and on reconsideration.  <u>See</u> AR 10, 78, 82.  A hearing was held before an administrative law judge ("ALJ") on July 24, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  <u>See</u> AR 21-75.

On August 27, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled.  <u>See</u> AR 10-20.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 26, 2011, making the ALJ's decision defendant's final decision.  <u>See</u> AR 1; <u>see</u> <u>also</u> 20 C.F.R. § 416.1481.  On March 29, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  <u>See</u> ECF #1-#3.  The administrative record was filed with the Court on August 17, 2011.  <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing other jobs existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination.  See <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. <u>See</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.     <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Brown

The record contains three state agency psychological/psychiatric evaluation forms that were completed by Normal L. Brown, Ph.D., a non-examining physician, in late May 2007, early

REPORT AND RECOMMENDATION - 4

March 2008, and late January 2009.  <u>See</u> AR 225-31, 325-30, 390-95.  In those evaluation forms, Dr. Brown assessed plaintiff with a number of moderate to severe limitations in terms of both cognitive and social functioning, based on her diagnoses of PTSD, recurrent major depression, polysubstance dependence in full remission, and a rule out diagnosis of a personality disorder. <u>See</u> AR 226-27, 326-27, 391-92.  In her decision, the ALJ found as follows:

> With regard to the claimant's mental functioning, the record contains three evaluations from [Dr.] Brown . . . that were provided to the State Department of Social and Health Services pursuant to the claimant's receipt of public assistance payments between May of 2007 and January of 2009.  It does not appear that Dr. Brown had a treating relationship with the claimant, and in fact only saw the claimant when she needed this form filled-out.  It is problematic that Dr. Brown's opinions was largely based on the claimant's self-report when she was attempting to qualify for public assistance benefits. Furthermore, Dr. Brown did not prepare detailed evaluations, but rather completed the state's check-off psychological evaluation in which she indicated the claimant had significant symptoms and limitations (Ex. 1F; 16F; 22F).  As discussed above, the claimant's alleged limitations are inconsistent with her actual level of activity during the time period at issue, and the claimant's allegations are not credible.  Because Dr. Brown relied heavily on the claimant's self-reported symptoms, and her conclusions are not consistent with findings throughout the record, the undersigned has given her opinion very little weight in determining the claimant's mental residual functional capacity.

AR 17.  Plaintiff argues these are not valid reasons for rejecting the limitations assessed by Dr. Brown.  The undersigned agrees.

First, the mere fact that Dr. Brown did not have a treating relationship with plaintiff is irrelevant, given that Dr. Brown is an examining psychologist, and so by definition would not have had such a relationship therewith.  Nor has the ALJ pointed to the findings or opinion of a treating physician that contradict those of Dr. Brown, which might then justify her rejection of Dr. Brown's limitations on the basis of a lack of a treating relationship.  In addition, "absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. <u>See</u> <u>Lester</u>, 81 F.3d 821, 832 (9th Cir. 1996) ("An examining

REPORT AND RECOMMENDATION - 5

doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.").

While the state agency forms Dr. Brown completed, furthermore, may not be as detailed as the ALJ would have liked in this case, the undersigned notes defendant often has relied on opinions provided on such forms to uphold his non-disability decisions. In any event, the forms Dr. Brown completed do contain clinical findings the Ninth Circuit has found to be sufficiently objective to provide a proper basis for diagnosing impairments or assessing limitations. For example, in the forms she completed, Dr. Brown provided the results of psychological testing. See AR 225, 325, 390. She also conducted a mental status examination each time. See AR 229-31, 329-30, 394-95; see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnosis of psychiatric disorder, just as physical examination results provide basis for diagnosis of physical illness or injury).

That being said, the undersigned finds the ALJ did not err in rejecting at least in part Dr. Brown's findings based on the ALJ's determination that plaintiff was not fully credible regarding her subjective complaints, as discussed further below. That is, the basis Dr. Brown provided for the limitations in social functioning she assessed appear to be entirely based upon plaintiff's own self-reports. See AR 227, 327, 392. It is true, as plaintiff points out, that the Ninth Circuit has stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th

Cir. 2008). But the Ninth Circuit went on to note there was "nothing in the record to suggest" the physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.

As just discussed, though, such is not the case here with respect to the social functional limitations Dr. Brown assessed. On the other hand, the cognitive limitations plaintiff was found to have as well, do appear to have been based primarily, if not entirely, on the mental status examination and psychological testing results. See 227, 327, 392. As such, it was improper for the ALJ to reject the cognitive limitations Dr. Brown assessed on this basis. Lastly, while the ALJ states Dr. Brown's findings "are not consistent with findings throughout the record" (AR 17), she fails to indicate what those findings are. Further, it is insufficient for an ALJ to reject the opinion of an examining physician by merely stating, without more, that there is a lack of objective medical evidence to support it. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). As such, the ALJ erred in rejecting the cognitive limitations assessed by Dr. Brown, but not, for the reasons noted above, in rejecting the limitations in social functioning.

B.    Dr. Baer, Dr. Barkin, Ms. Staten and Ms. Kasnick

Plaintiff argues the ALJ erred by failing to discuss various diagnoses, clinical findings, prescriptions for medications, and recordings of plaintiff's self-reports contained in the record from Karl G. Baer, M.D., and Karin Barkin, M.D., two of her treating physicians, and Sylvia Staten and Judie Kasnick, both mental health therapists. See ECF #14, pp. 7-10 (citing AR 281-82, 284, 288, 293, 296, 316, 417-19, 421, 426-32, 437-38, 440-41, 443-44, 446, 449). But as plaintiff herself admits, none of these medical sources "stated a clear opinion" (ECF #14, p. 10) – or in fact any opinion at all – as to actual work-related functional limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient

1  proof of a disability.").

2      Plaintiff goes on to argue that the above findings "are important, because they show that

3  [she] has consistently described her symptoms to her mental health treatment providers and has

4  been consistently taking medication to treat her impairments." ECF #14, p. 10.  However, while

5  this argument might bear on plaintiff's credibility – although again as discussed in further detail

6  below, the record supports the ALJ in finding her to be not fully credible in this case – it does not

7  establish the existence of significant mental functional limitations.  Similarly, although plaintiff

8  further asserts the findings of Ms. Staten and Ms. Kasnick are "generally consistent" with those

9  of Dr. Brown, neither therapist gave any opinion regarding actual work-related mental functional

10  limitations, and the findings plaintiff appears to rely on here largely consist of what plaintiff told

11  them regarding her symptoms. ECF #14, pp. 8-10.

12      C.      Dr. Staker and Dr. Kain

13      Plaintiff challenges the ALJ's following findings:

14  The claimant's medical record contains a physical evaluation report from
    Lynn L. Staker, M.D., from May of 2007.  Based on her examination of the
15  claimant, Dr. Staker concluded that the claimant's scoliosis was of mild to
    moderate severity, as it caused difficulty with prolonged standing, sitting, and
16  bending.  Accordingly, it was Dr. Staker's opinion that the claimant could
    perform work activities at the sedentary exertional level (Ex. 3F).  Dr.
17  Staker's opinion is consistent with objective findings in the record.
    Diagnostic images do show evidence of scoliosis and degenerative disc
18  disease; however, there are minimal abnormal findings with regard to range of
    motion and performance of other physical activities.  In addition, the claimant
19  reported that she was capable of activities such as ascending and descending
    stairs, cooking, dressing, driving, fastening and unfastening her seatbelt,
20  getting into and out of a bathtub, getting in and out of a vehicle, reaching for a
    seatbelt, squatting or kneeling for activities of daily living, standing from a
21  seated position, and walking household and community distances (Ex. 23F/1).
    Furthermore, this assessment is consistent with actual tolerance levels, tested
22  during physical therapy (Ex. 20F).  Accordingly, the undersigned gave great
    weight to Dr. Staker's opinion.

23

24  AR 16-17.  Specifically, plaintiff argues the ALJ erred here, because "Dr. Staker did not state an

opinion as to how long [she] could stand or sit before she would have to change positions, nor did he state an opinion as to how long [she] would have to be in some other position before she could return to the prior position." ECF #14, p. 12. Plaintiff also argues that "while Dr. Staker opined that [she] was limited to sedentary exertion, he did not expressly state that she would be able to perform full-time sedentary work activity." Id.

The undersigned finds these arguments to be without merit. First, there is no indication that the state agency evaluation form Dr. Staker used to offer his opinion contemplates anything other than full-time work. Indeed, that form includes in its definition of "sedentary work," the ability to "frequently[] lift and/or carry such articles as files and small tools." AR 246. It further defines the term "frequently" to mean the ability to perform the particular function "for 2.5 to six (6) hours in an eight-hour day," thereby indicating an ability to perform an eight-hour workday is contemplated. Id. Second, there is no indication Dr. Staker felt plaintiff would have to change positions, if at all, or could not sit or stand in a manner inconsistent with the ability to perform sedentary work.[1] Thus, the undersigned finds no error here.

Plaintiff's challenge to the following additional findings the ALJ made is equally without merit:

Claimant was also seen by WestSound Orthopedics from April to July 2008

---

[1] For the same reason, the ALJ rejects plaintiff's argument that the testing performed during physical therapy was flawed, because that testing gave "no indication" as to "how long [she] would have to maintain a different position after sitting for thirty minutes" or that she "would be able to perform full-time sedentary work activity." ECF #14, p. 12. That is, plaintiff has failed to show either this testing or the opinion of Dr. Staker is inconsistent with an ability to perform full-time sedentary work. See 20 C.F.R. § 404.1567(a) (providing that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties," and that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 *3 (noting in terms of sedentary work that the term "occasionally" means "occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday," and that "[s]itting would generally total about 6 hours of an 8-hour workday."). So too does the undersigned find without merit plaintiff's contention that the ALJ erred in failing to acknowledge that she was noted to continue to have pain with walking for more than eight to ten minutes during that testing, given that no actual additional work-related functional limitation was attached to this finding or noted to be caused thereby. See AR 368.

REPORT AND RECOMMENDATION - 9

for back pain.  On evaluation it was noted [the] claimant had normal gait and full range of motion.  The physician, Christopher Kain, MD, diagnosed a thoracolumbar curve and myofacial pain syndrome.  He indicated that [the] claimant was "well compensated" and her sagittal alignment was "perfect." Dr. Kain recommended that the claimant participate in a vigorous exercise program.

AR 17.  While plaintiff asserts the ALJ did not "take into account the pain associated with this impairment" (ECF #14, pp. 12-13), the record fails to show there were any actual work-related functional limitations stemming therefrom (see AR 379).  Accordingly, the undersigned finds no error on the part of the ALJ here as well.

        D.    <u>Ms. McElvain and Mr. Maw</u>

Plaintiff argues the ALJ erred as well in finding as follows:

Also found in the record are two evaluations from Rachel McElvain, PA-C. Both of these assessments note that the claimant's scoliosis markedly limits activities such as sitting, standing, walking, lifting, handling, carrying, balancing, bending, climbing, crouching, and stooping.  It was Ms. McElvain's opinion that the claimant's overall work level was "severely limited" (Ex. 17F; 24F).  These assessments are unsupported by objective findings in the medical record and Ms. McElvain is not a physician, therefore she is an unacceptable medical source.  Furthermore, her opinion is contradicted by the claimant's own self reported activities discussed above (See Ex. 23F).  Therefore, the undersigned has considered it but has given it very little weight.

AR 17.  Plaintiff asserts Ms. McElvain's opinion is supported by objective evidence, including x-ray and MRI reports, as well as Ms. McElvain's own clinical findings.  But neither the x-ray and MRI reports nor those clinical findings actually indicate the presence of physical functional limitations, at least to the level or extent opined by Ms. McElvain. <u>See</u> AR 243, 321-23, 342-45, 403-04, 410-14; <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings).  In addition, the activities plaintiff has engaged in indicate an ability to function at a level greater than that of "severely limited," which is defined as being "unable to lift at least 2 pounds or unable to stand and/or walk." AR

REPORT AND RECOMMENDATION - 10

344; see also AR 40-51, 62-63, 148, 150-53, 178, 180-83, 282, 284-85, 292, 294-95, 297, 403, 417, 427, 430, 444-46, 449; Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis of reported activities); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected opinion of physician in part because it conflicted with claimant's pain complaints).[2] The ALJ, therefore, properly rejected her opinion here.[3]

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

---

[2] Plaintiff asserts without any further explanation that none of her self-reported activities are inconsistent with Ms. McElvain's opinion, but as the above cited pages of the record reveal, those self reports show an ability, among others, to lift at least 10 pounds and to stand and/or walk.

[3] While it is true that the mere fact that Ms. McElvain is not an "acceptable medical source" by itself is not a valid basis for rejecting her opinion, as just discussed the ALJ provide other legitimate reasons for rejecting it. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (acceptable medical sources include licensed physicians and licensed or certified psychologists); see also 20 C.F.R. § 416.913(a), (d) (evidence from medical sources other than those who are acceptable medical sources, may be used to "show the severity" of claimant's impairments and their effect on claimant's ability to work); SSR 06-03p, 2006 WL 2329939 *5 (noting that while "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals[,]' . . . depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source'").

REPORT AND RECOMMENDATION - 11

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part on the following basis:

> The claimant's actual activities documented throughout the record are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. In particular, the claimant's activities with Oxford House, a clean and sober living environment, show she is more functional that [sic] she has claimed. In December of 2007, Kitsap Mental Health treatment records indicate that the claimant was running to be the chairperson at Oxford House with the goal of getting to go to a national convention in New Orleans. Not only did she go to New Orleans in November of 2008 (Ex. 25F/5; 26F/10). She was also prominently involved in fundraising efforts for the organization, she participated in outreach programs with a prison speaking to inmates, and she attended a convention in Washington, D.C., in addition to the one in New Orleans (Ex. 9F/3; 25F/1; 26F/10, 17, 18). Furthermore, despite the claimant's allegations of severe social anxiety, in November of 2007, records indicate that she began dating and she eventually moved into her boyfriend's home in June of 2009 (Ex. 26F/1). In fact, the claimant reported that she stepped down from her chair position in the house organization in order to have more time to spend with her boyfriend (Ex. 26F/17). Such activities are not consistent with the claimant's allegations of severe social phobias.
>
> Others activities also demonstrate that the claimant is not as limited as she alleged. For example, she reportedly went open sea fishing with a group of

people and "had a blast" (Ex. 26F/16). In addition, the claimant reported obtaining her driver's license so she could start looking for work (Ex. 16F/2, 3). In fact, in March of 2008, the claimant reported to her therapist that she would like to work at Joanne's fabrics and she wanted to be more independent (Ex. 26F/21).

AR 16. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. But the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722.

Plaintiff argues the ALJ erred here by "improperly engaging in selective citation to the record," and by failing to acknowledge her own testimony regarding her daily activities. ECF #14, p. 16. The undersigned, however, finds the ALJ's citation to the record here is an accurate summary thereof. In addition, although plaintiff's testimony at the hearing does present a more limited picture of those activities than that presented elsewhere in the record, the ALJ did not err in placing greater reliance on what she earlier reported. See Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms); Allen, 749 F.2d at 579 (court may not reverse ALJ's credibility determination where that determination is based on contradictory or ambiguous evidence). For example, despite her claims of disabling mental health symptoms,

plaintiff reported that attending the national convention in Washington, D.C., was "very helpful" in regard to her social anxiety, and that she even was able to go out "on a date, which she [had] not done in a long time." AR 282.

Plaintiff also was repeatedly observed to be both "pleasant and social with peers" during group therapy sessions. See AR 285, 289, 292, 294, 297. Indeed, in early October 2007, she reported "looking forward to helping out at [a] spaghetti feast." AR 295. In late November 2007, plaintiff told her therapist that "she was 'wrangled' into a triple date," but that nevertheless "the date was fun." AR 288. In late December 2007, she reported "putting in for the Fund Raiser Chairperson position for her [clean and sober] housing," because she "want[ed] to be guaranteed a spot" for the trip to New Orleans. AR 284. Plaintiff reported as well that when she made that trip, she did so "with several people" and enjoyed it "very much." AR 419.

Plaintiff apparently felt well enough to "think about looking into part time work after the new year." AR 284. Although she reported in early March 2008, that she was not yet "ready to be looking for work," even on a part-time basis, she did – as noted by the ALJ – tell her therapist that she "would really like to work at Joanne's fabrics." AR 449. Her therapist also commented that plaintiff was "actually doing much better about putting herself out there and working on her independence." Id. In early April 2008, plaintiff reported doing "an outreach at Mission Creek prison" and giving another "presentation", and her therapist once more noted she was "increasing her outreaches and her social outings." AR 446.

In early May 2008, plaintiff reported that "her fund raising night turned out great," and that, again as noted by the ALJ, she was "going to step down from her chair position in [her] house/organization as she want[ed] to have more time to spend with her [boyfriend]." AR 445. It is true, as plaintiff points out, that the Ninth Circuit has "recognized that disability claimants

REPORT AND RECOMMENDATION - 14

should not be penalized for attempting to lead normal lives in the face of their limitations" (see Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)), but her self-report in this instance directly contradicts her claim of severe social anxiety (see Orn, 495 F.3d at 639). The above reports of increased outreaches and social outings also belie plaintiff's argument that she can only be out in public with those she trusts.

The ALJ also did not err in relying on plaintiff's early June 2008 self-report that she had "conquered a fear of water by going open sea fishing with a bunch of people a few weeks ago," and that she "had a blast!" AR 444. Plaintiff argues the fact that she went open sea fishing while attempting to overcome her fear of water diminishes the importance of this outing, but it is not at all clear how this is so. Indeed, the fact that she could go out in public with others, have a good time and at the same time conquer a fear of hers, speaks volumes to the progress it seems she has made in terms of her social anxiety and other mental impairments. Plaintiff's therapist reported as well at that time that she "need[ed] to work on a list of things that interest her so [they could] start working on possible job ideas." Id.

The ALJ further discounted plaintiff in relevant part because:

The record also indicates that the claimant made medication changes on her own. While she had an "excellent response to Zoloft," she discontinued the medication because she reported her hair was falling out. The claimant stated that she would rather have some anxiety and depression than lose her hair, even though her symptoms were better controlled with Zoloft (Ex. 9F/1). The claimant had the same side effect with Effexor in July of 2008. After switching to Celexa, the [sic] she reported it was less effective in controlling her symptoms, but she would rather have some anxiety and depression than become "bald" (Ex. 9F/1; 25F/7; 26F).

It is also noted that the claimant was not fully compliant with treatment. For example, she did not attend appointments and she did not complete, or even attempt to complete, homework that was given as part of her counseling, despite her involvement in numerous other activities detailed above (Ex. 26F). In fact, with regard to the claimant's lack of participation in homework, her counselor noted that although the claimant complained of issues she would

> like addressed, she would not do the work asked of her (Ex. 26F/10). The
> claimant's failure to comply with recommended treatment modes suggest that
> her alleged symptoms may not have been as limiting as she has alleged.

AR 16. The failure to assert a good reason for not following a prescribed course of treatment, or a finding that a claimant's proffered reason for not doing so is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The undersigned agrees with plaintiff that it was not reasonable for the ALJ to find her less than fully credible for discontinuing her medication, due to the significant hair loss she experienced. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility on basis of failure to pursue treatment, when claimant "has a good reason for not" doing so); see also 20 C.F.R. § 416.930(c) (ALJ must consider claimant's physical condition in determining whether he or she has acceptable reason for failing to follow prescribed treatment, such as "because of its enormity . . . unusual nature . . . or other reason [that it] is very risky for [the claimant]"); SSR 96-7p, 1996 WL 374186 *7 (ALJ must not draw any inferences about claimant's symptoms and their functional effects from his or her failure to follow prescribed treatment, without first considering any explanations he or she may provide or other information in record which may explain that failure). Here, the ALJ did not explain why she believed losing her hair did not constitute a significant enough impact on plaintiff's physical condition to justify her decision to discontinue her medication.

On the other hand, plaintiff has not provided any valid reasons for her failure to comply with the treatment recommended by Ms. Slaten, her mental health counselor. For example, in early October 2007, Ms. Slaten noted plaintiff "did not get any of her assignments completed." AR 295. In early December 2007, plaintiff "was a NO SHOW again for" her appointment with Ms. Slaten, and was a NO SHOW once more in late March 2008, with no apparent explanation

therefor. AR 286, 448. In late June 2008, Ms. Slaten reported that:

> . . . [Plaintiff] ha[d] not completed or attempted any of the [homework] assignments given over the past few months. [Plaintiff] appears to not be very interested in pursuing anything new at this time. She will not help set up goals and feels "My life is pretty good right now."

AR 443. In early August 2008, Ms. Slaten wrote that plaintiff "was a NO SHOW again," which was "twice in a row now," and that she would "discuss with [her] about [being discharged] due to fulfilling all her [treatment] Plan goals." AR 442. In early September 2008, Ms. Slaten once more reported that:

> . . . [Plaintiff] has been given numerous assignments to work on over the past 6 or so months and [plaintiff] has failed to follow through on any of those assignments. They were especially geared towards working on [her major social phobia that plaintiff reported did not seem to be getting any better]. [Plaintiff] was encouraged to decide what she wants of therapy because if she is not willing to do the work assigned then the rest seems worthless. [Plaintiff] is already only being seen once per month per her request.

AR 440. In early October 2008, Ms. Slaten noted:

> . . . [Plaintiff] has basically refused to do any of the [homework] assignments given to her over the past 6-8 months. She [complains of] some issues she would like to get rid of but won't do any of the work asked of her. This [therapist] talked to [plaintiff] and emphasized that if she continues to not do the work then therapy is not going to work for her. . . .

AR 438. Another NO SHOW was reported in late January 2009, as well. AR 436.

It is true the Ninth Circuit has held that the fact that a claimant does "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to find a claimant not credible regarding that condition. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize that their condition reflects potentially serious mental illness); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions regarding his depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for

REPORT AND RECOMMENDATION - 17

exercise of poor judgment in seeking rehabilitation). But here, there is no indication plaintiff's failure to follow through with Ms. Slaten's recommended treatment was the result of her mental health impairments. Indeed, as indicated above, Ms. Slaten herself believed that plaintiff's lack of follow through was volitional, rather than due to her disease process.

Thus, while one of the ALJ's stated reasons for discounting plaintiff's credibility was not proper – namely plaintiff's decision to discontinue her prescribed medications because of her hair loss – this does not render the ALJ's credibility determination invalid, as it is supported by substantial evidence in the record. See Tonapetyan, 242 F.3d at 1148; Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

Plaintiff argues the ALJ failed to state specific reasons for rejecting other aspects of her testimony, but there is no requirement that the ALJ address every aspect of such testimony in order to find her not fully credible overall regarding her complaints. See Lester, 81 F.3d at 834 (noting that ALJ merely must provide "specific, cogent reasons" for disbelieving testimony of claimant, and identify "what testimony is not credible and what evidence undermines the claimant's complaints."); see also Smolen, 80 F.3d at 1284 (in discounting credibility, ALJ may consider "ordinary techniques of credibility evaluation," including other testimony that "appears less than candid"); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Lastly, plaintiff argues this Court should find the ALJ's entire credibility determination is tainted in light of the ALJ's error in evaluating the cognitive limitations assessed by Dr. Brown. But the ALJ did not discount plaintiff's credibility, or at least not expressly so, on the basis of inconsistency with the medical evidence in the record. In addition, the other, valid reasons given

by the ALJ for determining plaintiff to be not entirely credible are separate and distinct from the evidence of plaintiff's functioning contained in Dr. Brown's opinions. That is, as just discussed, those additional reasons present other, independent bases for finding plaintiff not fully credible, each with "ample support in the record." Bray, 554 F.3d at 1227.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from three lay witnesses (see AR 200-214), with respect to which the ALJ found as follows:

> . . . [T]he undersigned has considered the lay witness statements presented by Debra Crane, Keith Hoppe, and Lisa Martin (Ex. 13E; 14E; 15E). In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. It is clearly in their best interest, and the interest of the claimant, to support the claimant's allegations. However, the medical evidence of record does not support the claimant's allegations, and the claimant's reported level of activity throughout the record contradicts the statements of the witnesses and the claimant's allegations. It is clear that the statements of Ms. Crane, Mr. Hoppe, and Ms. Martin were based largely on the self-report of the claimant to her friends. Therefore, because the lay witness statements are not consistent with the medical evidence of record, the undersigned has considered it, but finds that it has little probative value.

REPORT AND RECOMMENDATION - 19

AR 18.  The undersigned agrees with plaintiff that the ALJ erred here in rejecting the lay witness

statements on the basis that it was "clearly in their interest" to support plaintiff's claims.  Family

members who are in a position to observe a claimant's symptoms and daily activities are deemed

to be competent to testify as to those symptoms and activities.  See Dodrill v. Shalala, 12 F.3d

915, 918-19 (9th Cir. 1993).  In Sprague v. Bowen, 812 F.2d 1226 (9th Cir. 1987), the Ninth

Circuit indicated that the existence of a "close relationship" between the lay witness and the

claimant, and the potential to be "influenced" by the "desire to help," can be viewed as being

"germane" to that particular lay witness.  Id. at 1232 (citing 20 C.F.R. § 404.1513(e)(2)).  Later,

in Greger v. Barnhart, 464 F.3d 968 (9th Cir. 2006), the Court of Appeals again found the ALJ in

that case properly considered the close relationship between the claimant and his girlfriend, and

the possibility she might have been influenced by the desire to help him. Id. at 972.

       In Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), however, the Ninth Circuit reiterated

its position that "friends and family members in a position to observe a claimant's symptoms and

daily activities are competent to testify as to [his or] her condition." Id. at 1116 (quoting Dodrill,

at 1918-19.  The Court of Appeals did note its prior decision in Gregor, but nevertheless went on

to find the ALJ erred in rejecting the lay witness testimony in Bruce on the basis of that witness's

close relationship with the claimant, without explaining this difference in its two rulings. See id.

(citing 464 F.3d at 972).

       The only explanation the undersigned can glean from reviewing those rulings is that in

Greger there appears to have been at least some evidence – although the Ninth Circuit did not

discuss exactly what that evidence was – of the lay witness "possibly" being "influenced by her

desire to help" the claimant in addition to the "close relationship" she had with him (464 F.3d at

972) – while in Bruce, no such evidence existed.  More recently, in Valentine v. Commissioner

REPORT AND RECOMMENDATION - 20

of Social Security, 574 F.3d 685 (9th Cir. 2009), the Ninth Circuit stated that "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." Id. at 694 (emphasis in original). [4]  The ALJ in this case, however, did not point to actual evidence in the record of specific exaggeration on the part of the lay witnesses, nor does the undersigned find any.

On the other hand, the ALJ may discount lay witness testimony if it conflicts with the medical evidence in the record. Lewis, 236 F.3d at 511; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason for rejecting lay testimony); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  Citing Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), plaintiff argues the ALJ should not have rejected the lay witness statements on the basis of their relevance or irrelevance to the medical evidence in the record or because it is not supported by that evidence.  It is true the Ninth Circuit held in Bruce that the claimant's wife's testimony could not be discredited "as not supported by medical evidence in the record." Id. at 1116.  In so holding, the Ninth Circuit relied on its prior decision in Smolen, which held the claimant's family's testimony was improperly rejected on the basis that medical records did not corroborate the claimant's symptoms, because in so doing the ALJ violated defendant's directive "to consider the testimony of lay witnesses where the claimant's

---

[4] In so holding, the Ninth Circuit further commented in relevant part as follows:

> The ALJ . . . relied in part on [a fact] quite common to spouses: that [the lay witness], as [the claimant's] wife, was an interested party . . .  Such a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.' Dodrill, 12 F.3d at 918-19. . . . Thus, insofar as the ALJ relied on [a characteristic] common to all spouses, she ran afoul of our precedents.

Id.

alleged symptoms are *unsupported* by her medical records." <u>Bruce</u>, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original).

The Ninth Circuit, however, did not address its earlier decisions in <u>Bayliss</u>, <u>Lewis</u> and <u>Vincent</u>, in which, as discussed above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." <u>Lewis</u>, 236 F.3d at 511 (citing <u>Vincent</u>, 739 F.2d at 1995); <u>see</u> <u>also</u> <u>Bayliss</u>, 427 F.3d at 1218. Accordingly, although <u>Bruce</u> is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of <u>Bayliss</u>, <u>Lewis</u> or <u>Vincent</u> was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether rejecting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. In addition, the undersigned agrees with the reasoning employed by United States Magistrate Judge Mary Alice Theiler to distinguish <u>Bruce</u> in a recent case:

> As asserted by [defendant], the Ninth Circuit's decision in *Bruce* can be distinguished. In that case, the Court rejected as improper the ALJ's reasoning that the lay testimony was "not supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of this conclusion. Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to objective medical evidence*. *Smolen*, cited in *Bruce*, can be similarly distinguished. In that case, the Court noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as to those symptoms. 80 F.3d at 1288-89. The ALJ in *Smolen*, therefore, had erred in rejecting the lay testimony because " 'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289. As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective medical evidence*.

<u>Staley v. Astrue</u>, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added).

That being said, as noted above, the ALJ stated she rejected the lay witness statements in

part on the basis that "the medical evidence of record [did] not support [plaintiff's] allegations." AR 18. The ALJ, however, did not state what portion or portions of the medical evidence were not supportive thereof.[5] In other words, it is unclear whether the ALJ actually rejected the three lay witness statements on the basis that they in fact were inconsistent with the medical evidence in the record, or instead because in general she found the evidentiary value of such statements to be less than that provided by the objective medical evidence. In addition, as discussed above, the ALJ erred in evaluating the cognitive limitations assessed by Dr. Brown, and thus at least to that extent it would have been improper for the ALJ to rely on the medical evidence in the record to reject the lay witness evidence in this case.

The undersigned also finds the ALJ erred in finding that it was "clear" the statements of the lay witnesses "were based largely on the self-report of [plaintiff] to her friends." AR 18. Where a lay witness's testimony is "similar to [the claimant's] own subjective complaints," the ALJ has "provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints," and "the ALJ rejected [the lay witness] evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations,'" then "it follows that the ALJ also gave germane reasons for rejecting her testimony." Valentine, 574 F.3d at 694. But, while the ALJ in this case properly discounted plaintiff's credibility, she did not reject the statements of the lay witnesses for the same reasons she discounted plaintiff's credibility, but rather merely on the basis that those statements relied on plaintiff's own self-reports. It is quite clear, however, that each of the three lay witnesses based their statements to a large extent on their own personal observations of plaintiff. See AR 200-214. Thus, here too the ALJ erred.

_____

[5] Similarly, the ALJ did not state which activities plaintiff engaged in contradicted the statements provided by the lay witnesses, and in what way or ways they contradicted those statements. As such, the undersigned is unable to determine if this reason was in fact germane to these specific lay witnesses.

REPORT AND RECOMMENDATION - 23

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

A claimant's residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

**. . . [T]o lift and/or carry less than 10 pounds occasionally or frequently, stand and/or walk up to two hours total in an eight hour workday, and sit up to six hours total in an eight hour workday.  The claimant should have the option to stand every 30 minutes to stretch for one to two minutes. The claimant has occasional postural limitations, should avoid**

REPORT AND RECOMMENDATION - 24

**concentrated exposure to hazards, and she is limited to no more than
occasional contact with the general public or co-workers.**

AR 15 (emphasis added). Plaintiff argues the ALJ erred in assuming she should have the option

to stand every 30 minutes to stretch for one to two minutes, noting that Alfred Scottoloni, M.D.,

a non-examining, consultative physician, affirmed the opinion of Robert Hoskins, M.D., another

non-examining, consultative physician – in which he found plaintiff to be capable of performing

sedentary work with certain additional non-exertional limitations (see AR 272-79) – but stated he

"[p]robably would have permitted [plaintiff] to change position from sitting to standing ad lib

because of her discomfort with prolonged activity of either type." AR 301. The ALJ, however,

did not address this opinion evidence and, as such, she erred. Accordingly, it cannot be said that

the ALJ's RFC assessment accurately describes all of plaintiff's limitations.

The undersigned further agrees with plaintiff that because, as discussed above, the ALJ

erred in evaluating the cognitive limitations assessed by Dr. Brown, the ALJ's RFC assessment

cannot be said to be completely accurate as well. Plaintiff also argues the ALJ erred in failing to

include in that assessment the moderate mental functional limitations checked by Rita Flanagan,

Ph.D., a non-examining, consultative psychologist, in Section I of the mental residual functional

capacity assessment ("MRFCA") form she completed. See AR 253-54. Pursuant to the directive

contained in defendant's Program Operations Manual System ("POMS"), though, "[i]t is the

narrative written by the psychiatrist or psychologist **in [S]ection III [of the MFRA form] . . .**

**that adjudicators are to use as the assessment of [the claimant's RFC].**" POMS DI

25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original).

Although the POMS "does not have the force of law," the Ninth Circuit has recognized it as

being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001,

1005 (9th Cir. 2006).  Nor does the undersigned find or plaintiff point out any legitimate reasons for not following that directive in this case.

On the other hand, in Section III of the MFRA form she completed, Dr. Flanagan opined that plaintiff could "remember and execute simple instructions" and could "sustain concentration on simple, repetitive tasks," but that her depressive symptoms "may episodically slow [her] work pace," although she could still "be productive." AR 255.  None of these limitations are included in the ALJ's assessment of plaintiff's residual functional capacity, however, nor did the ALJ give any explanation as to why they were not included therein, which provides an additional basis for finding the ALJ erred here.

V.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 66-69. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – could perform other jobs. See id. Based on the testimony of the vocational expert, the ALJ found plaintiff would be able to perform other jobs existing in significant numbers in the national economy. See AR 18-19.

Plaintiff argues the ALJ erred at step five, because the hypothetical question she posed to the vocational expert did not include all of her functional limitations. The undersigned agrees that because, as discussed above, the ALJ erred in evaluating the opinion of Dr. Brown and the lay witness evidence in the record, and in assessing plaintiff's credibility and RFC, it is far from clear that the hypothetical question accurately described her ability to function. Accordingly, it was error for the ALJ to rely on the vocational expert's response to that hypothetical question in finding plaintiff was capable of performing other jobs existing in significant numbers in the national economy, and thus that she was disabled at this step.

On the other hand, the undersigned finds that because it is not clear from the record that the ALJ would be required to adopt the recommendation of Dr. Scottoloni, it also is not clear that the ALJ would have had to accept the vocational expert's testimony that a need to alternate between sitting and standing more than about every 30 minutes, would interfere with plaintiff's ability to do sedentary work. See AR 72-73. Further, since, as discussed above, the ALJ was required to consider the written statements contained in Section III of the MRFCA form Dr. Flanagan completed, and not the moderate mental functional limitations she checked in Section I

thereof, the ALJ was not required to accept the testimony of the vocational expert that those limitations likely would not allow plaintiff to maintain employment. See AR 71-72. Thus, these arguments do not provide a basis for reversing the ALJ's step five determination.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the cognitive limitations assessed by Dr. Brown, as well as in regard to the lay witness evidence in the record, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate in this case.

REPORT AND RECOMMENDATION - 28

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 30, 2012**, as noted in the caption.

DATED this 14th day of March, 2012.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 29